ALBERT PRIBE, Defendant in Error, v. WILLIAM H. GLENN *et al.*, Plaintiffs in Error.

**St. Louis Court of Appeals, May 22, 1888.**

SALE—DEFRAUDING CREDITORS—INNOCENT PURCHASER.—A sold a stock of goods to B with the intent of hindering, delaying, or defrauding A's creditors, and B sold and delivered the goods to C, who had no knowledge of or participation in the fraud, and thereupon C gave his check for the purchase money to B, who deposited it in the bank, taking a certificate or ticket of deposit as for so much cash.. *Held :* The transactions vested a complete title to the goods in C, against which an attachment and levy in behalf of A's creditors. could not prevail.

ERROR to the Ralls Circuit Court, HON. THEODORE BRACE, Judge.

*Affirmed.*

ANDERSON & FOREMAN and W. H. MORROW, for the plaintiffs in error : In case of a sale and transfer of personal property by a vendor with intent to hinder, delay, or defraud creditors, the purchaser, to be protected in such sale and transfer, when contested by such creditors, must have bought and paid for the property in good faith and for valuable consideration without notice of such fraudulent intent either at time of purchase or payment, and to constitute the payment required by law it must have been actually made in money or property, or the purchaser before the time of such notice must have so bound himself as to be absolutely responsible for the amount of the purchase price. *Arnhold v. Hartwig*, 73 Mo. 485 ; *Dougherty v. Cooper*, 77 Mo. 528.. The defendant in error being in possession at the time the goods in controversy were levied upon by the plaintiffs in error under writs of attachment, could not after such levy make payment or bind himself to pay, such levy constituting sufficient notice in law to him..

*Dougherty v. Cooper*, 77 Mo. 528. Instruction number four, given for defendant in error is erroneous because, as between Carmichael and the defendant in error, the check taken in payment was an ordinary bank check drawn by defendant in error on his bank account and payable to Carmichael, and was subject to being countermanded at any time by the defendant in error before it was presented and paid by the bank. The check gave Carmichael no right of action against the bank if not paid, and being a fraudulent vendor he could have no right of action against the defendant in error for countermanding the check, the consideration thereof failing. *Dickenson v. Coats*, 79 Mo. 250; *Arnhold v. Hartwig*, 73 Mo. 485. The instruction was wrong because there is no evidence to support any such instruction. The check was given and accepted in payment as usual in ordinary business transactions. There was no agreement made by Carmichael that he would accept the check in absolute discharge, and there was none made by defendant in error that he would in no event countermand its payment, and even if he had made such an agreement in favor of Carmichael, the agreement would not have been binding because of the fraud of Carmichael, and a failure of consideration. The evidence is uncontradicted, and the jury so found in their special findings, that Carmichael was a party to the fraudulent sale. This being so the defendant in error could have made no agreement with him, nor executed and delivered to him any check or other paper in payment for the goods in question, upon which he would have been bound to Carmichael upon notice of the fraud. 1 Parsons on Contracts, 462; 2 *Ibid.* 767. The bank at the time it was notified by defendant in error not to pay check had not in fact given Carmichael credit by delivering him a certificate of deposit. The cashier had only given him a counter certificate the night before, which is not a certificate of deposit, but only a deposit ticket, and having no element of negotiability about it. The check deposited was drawn on another bank, and deposited in Exchange

Bank without any express agreement that the same was accepted as cash ; and only the fact existed that credit was given, as is customary in case of bank depositors. Morse on Banks and Banking [1 Ed.] 320, 326 ; *Trust Co. v. McDonald*, 51 Cal. 64 ; Newmark on Bank Deposits, sec. 209 ; *Balbach v. Frelinghuysen*, 15 Fed. Rep. 675. The check given by defendant in error was not negotiable under the law of this state. *Bailey v. Smock*, 61 Mo. 213 ; *Bank v. Bank*, 3 Mo. App. 362 ; *Lowenstein v. Knoff*, 2 Mo. App. 159. Bank checks are not bills of exchange. *Merchants' Bank v. State Bank*, 10 Wall. 647. It makes no difference in this case whether the check was negotiable or not. It had not, in fact, been negotiated at time of notice given by Pribe. It had been simply given to the cashier of the bank for deposit, and that out of banking hours, and there is no evidence in the slightest degree tending to show any purchase of the check or agreement to purchase by the bank. The ordinary and regular certificate in deposit issued by banks, much more their counter certificates, or deposit tickets, are not negotiable instruments of this state. *Bank v. German Bank*, 3 Mo. App. 362.

BIGGS & REYNOLDS, for the defendant in error : The jury found that the sale from Todd to Carmichael was fraudulent, but before the judgment could be for plaintiffs in error, it must appear either that Pribe was not a *bona-fide* purchaser for value, that is, that he purchased with notice of the fraudulent intentions of Todd and Carmichael, or that he had notice of this before paying for the goods or before he became responsible therefor. That absolute payment can be made in this state by check or note has been well settled. *Appleton v. Kennan*, 19 Mo. 637 ; *Howard v. Jones*, 33 Mo. 583 ; *Block v. Dorman*, 51 Mo. 47 ; *Wiles v. Robinson*, 80 Mo. 47 ; *Commiskey v. McPike*, 20 Mo. App. 82 ; *Sturdevant v. Peterman*, 21 Mo. App. 512. Leaving out of question the agreement between Carmichael and Pribe that the check should be received as an absolute payment for

the goods purchased, our contention is that as the check had been transferred to the Exchange National Bank (and that we regard it as a non-negotiable instrument) yet the creditors of Todd had no right to demand that Pribe should countermand or stop the payment of the check and incur the chances and expense of a litigation with the Exchange Bank. The check had been transferred to the bank by Carmichael and a certificate of deposit issued to Carmichael, by which the said bank became the legal owner and holder of the check, and if not paid when presented the bank's right of action against Pribe became fixed. If Pribe should stop the payment of this check he would necessarily take upon himself the burden of proving the fraudulent character of the trade between Carmichael and Todd. The drawing of an ordinary check on a bank deposit does not operate as a legal or equitable assignment of the money due the depositor or any part thereof. But if the check is drawn on a particular fund, or for the whole sum due the depositor, or if the check contains any words of transfer, then the drawing and delivery of a check does operate as an equitable assignment of the deposit. *Dickason v. Coates*, 79 Mo. 251. The check reads as follows:

"Louisiana, Mo., January 15, 1886.

"Pay to order of J. C. Carmichael eight hundred dollars in full for all goods in store formerly owned by Asa Todd.

"$800.                          A. PRIBE.

"To Mercantile Bank, Louisiana, Mo."

It is true as contended by counsel for plaintiffs in error, that an ordinary bank check is not a negotiable instrument under the law in this state and the reason is that every negotiable instrument under our statute must contain the words "value received." In other words, in order to render any instrument negotiable, a consideration must be expressed or mentioned in the instrument itself. In the case at bar the check itself states

the consideration for which it was given which renders it negotiable.

PEERS, J., delivered the opinion of the court.

This is an action in replevin for a stock of merchandise, commenced on the sixteenth of January, 1886, in the Louisiana court of common pleas, and by change of venue transferred to and tried in the circuit court of Ralls county, Missouri.

As a matter of convenience in discussing the case, the parties are referred to as plaintiff and defendant as they appear in the record of the trial below. The plaintiff in error being the defendant below and "*vice versa.*"

The facts are, that plaintiff owned three adjoining store-rooms in the city of Louisiana. In one he kept a carriage-shop, in another he and one Suda carried on a hardware business, and the third was rented to Todd who was a grocery merchant. On the evening of January 15, 1886, as plaintiff and Suda were going home, the latter asked plaintiff if he had bought any goods out of the Todd stock that day, and receiving a negative answer, Suda then told plaintiff that the goods were being sold very rapidly, far below cost, and by the next night would all be sold. Suda also suggested to plaintiff the idea of buying the whole stock and putting plaintiff's son in the store to run it and thereby prevent the store-room from becoming vacant.

It further appears that on the fourteenth of January the stock of goods was owned by Asa Todd, who, on the morning of the fifteenth, sold them to J. C. Carmichael. It further appears that, during the morning of the fifteenth, Carmichael had come into the store-room of plaintiff and informed him that he (Carmichael) had bought out Todd and that plaintiff must now look to him for his rent. The evidence further shows that plaintiff knew very little about Carmichael and nothing at all about Todd's business or his creditors. It appears that Carmichael requested plaintiff to purchase the

stock, putting the price at thirteen hundred dollars. No trade was made, however, at this time. Afterwards, various offers being made, a sale was effected at eight hundred dollars. Carmichael wanted the money, but plaintiff told him he would have to wait until banking hours next morning. Carmichael insisted that he was compelled to leave town that night, and offered to take plaintiff's check in full payment for the stock of goods, to which plaintiff assented, and the check was given on the Mercantile Bank of Louisiana. Thereupon, Carmichael took plaintiff into the Todd store and put him in possession. In the meantime, it seems plaintiff had seen the father of Todd and inquired of him if he had any interest in the stock of goods. The elder Todd replying in the negative, plaintiff, as above stated, finally closed the purchase. It appears, also, that Carmichael had been selling goods cheaply and rapidly all day, but how much he realized in this way, or how much the stock was reduced, does not appear. Todd, at this time, owed some St. Louis firm about one hundred dollars, which Carmichael was anxious to secure, and the agreement between him and Todd was that Carmichael should pay Todd the excess of the purchase price remaining from the sale of the stock after satisfying Carmichael's claim. After Carmichael had placed plaintiff in possession, he hunted up Hawkins, cashier of the Exchange Bank, of Louisiana, and deposited the check given him by plaintiff, and received therefor a "counter certificate of deposit." Just what this paper given by Hawkins contained, and just how it differed from any other certificate of deposit, the record does not disclose. The next morning after the purchase, an attorney of the city, claiming to represent the creditors, informed plaintiff there would be trouble, and that if he had not already paid for the goods, he should not pay the money. Plaintiff thereupon went to his bank, found the check had not been paid, and stopped payment thereof. At the suggestion of his cashier, he went

to the Hawkins bank, where he was informed by Hawkins that the check had been "cashed"; when plaintiff returned to his store, he found the goods attached and in the sheriff's hands. Later in the day, plaintiff recalled the order to his bank not to honor the check, and directed the bank to pay the same when presented, and suing out his writ of replevin, secured the goods, and upon the trial of the case, the verdict was in his favor. After the usual proceedings below, the defendants bring the case here by writ of error.

The jury found a general verdict for the plaintiff, the special issues and findings being as follows:

"1. Was the transfer of Todd's stock of goods from Todd to Carmichael, made on the fifteenth day of January, 1886, effected by Todd and Carmichael for the purpose of hindering, delaying, or defrauding Todd's creditors? Ans. Yes.

"2. What was the money value of the stock of goods sold January 15, 1886, by J. C. Carmichael to Albert Pribe? Ans. $1,000.

"3. Had the check of eight hundred dollars, given by Pribe to Carmichael, been presented for payment or acceptance at the Mercantile National Bank at the time the sheriff seized the goods here in controversy under the writs of attachment read in evidence in this case? Ans. No. Not at the Mercantile Bank.

"4. Did plaintiff Pribe stop or countermand the payment of said eight hundred dollar check, before it had been presented to the bank on which it was drawn, for payment of acceptance? Ans. Yes.

"5. Were the goods here in controversy in the hands of the sheriff under attachment, when plaintiff agreed to or directed the payment of the eight hundred dollar check given by him to Carmichael? Ans. Yes."

The instructions are too many and too lengthy to set out here. Those given for both plaintiff and defendant covered the whole case and fairly presented the law, unless the one numbered five, given on behalf of plaintiff be erroneous, which, and the legal propositions

therein contained, we shall presently discuss. There can be no question that the jury in their general verdict found the facts in plaintiff's favor as to any knowledge of or participation in the fraud on his part. Defendants' first instruction completely covered these questions, and the special findings of the jury, as above set out, are not inconsistent with the general verdict.

The only question that can be raised with reference to them lies in the third and fourth and is the same question that is involved in plaintiff's fifth instruction already referred to which was given by the court and is as follows:

"5. If the jury believe from the testimony in the case that Carmichael had transferred plaintiff's check to the Exchange National Bank, and the said bank had given Carmichael credit therefor by delivering to him a certificate of deposit for the amount of said check, without any knowledge of any trouble in connection therewith, then the plaintiff Pribe was liable to said bank for the amount of said check, and such a state of facts would constitute payment for said goods within the meaning of plaintiff's third instruction."

We are not inclined to attach much weight to the recital in the check itself, that it was "in full for all goods," etc. It is not necessary to decide here just what legal signification should or should not be given to these words; the question can be determined upon the check independently of these words, or of any strength they add to the plaintiff's position. But there can be no doubt that the check was given and accepted in full payment for the goods. Plaintiff stated he could not get his money until morning, whereupon Carmichael proposed to take his check in payment, assigning as a reason that he was going to leave that night, and could not wait until morning to get the money. Plaintiff then says: "I will give the check," and it was given; Carmichael accepted it and turned over the goods to plaintiff,—hunted up Hawkins, the cashier, and told him he had "some money to deposit", delivered the check to

the cashier and received a "counter check", or "credit ticket" for it.

It is clearly established that Carmichael bought of Todd, took possession and sold off the stock as fast as he could for one day, and that, while he was thus in possession and selling, he disposed of the stock remaining to plaintiff, at an agreed price and took plaintiff's check in payment instead of the actual cash. This check then became the property of Carmichael as absolutely as would the money, had plaintiff given him that in place of the check.

Plaintiff was put in complete possession of the stock of goods and the trade was consummated as to both ; plaintiff could not then have rescinded without Carmichael's consent, by stopping the payment of the check, or in any other way.

There is no question but that at the time the goods were attached they belonged to plaintiff as against everybody excepting creditors, and against them, unless they could show that plaintiff had knowledge or reasonable grounds to suppose when he bought of Carmichael that Carmichael held in fraud of these creditors. But this question was submitted to the jury on the instructions, and they passed upon it in the general verdict, finding plaintiff without fraud or knowledge of fraud.

This leads to the conclusion that the fifth instruction was properly given. Citations are unnecessary, the facts are fully set forth and the legal principles involved so well established as to become elementary.

As to the other question, i. e., objection to the testimony, we fail to find in the record any exceptions saved by the defendants to the ruling of the trial court on this point.

A careful examination of the entire record, as well as the brief and authorities cited by the industrious counsel for defendants, fails to disclose any error which would justify our interference with the verdict and judgment of the trial court.

Judgment affirmed. All concur.